```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/07/2015
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                :

WAUSAU UNDERWRITERS INSURANCE       :
COMPANY,                                      :
                                                :
                   Plaintiff,               :
                                                  :
                 -v-                             :
                                                :
OLD REPUBLIC GENERAL INSURANCE        :
COMPANY,                                      :
                                                :
                 Defendant.            :
                                                :
------------------------------------------------------------------------X

14-CV-3019 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

       This case involves a dispute between two insurance companies over which is obligated to

defend and indemnify the defendants in another lawsuit now pending in New York State

Supreme Court for the County of New York, *Burawski v. 170 Broadway NYC LP, et al.*, Index

No. 154637/13 (the "*Burawski* action").  Specifically, Plaintiff Wausau Underwriters Insurance

Company ("Wausau") brings suit against Defendant Old Republic General Insurance Company

("Old Republic") pursuant to Title 28, United States Code, Section 1332 (and, presumably,

Section 2201), seeking a declaratory judgment that Old Republic is obligated to defend and

indemnify certain defendants in the *Burawski* action.  Wausau now moves for summary

judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For the reasons that

follow, the motion is granted.

## BACKGROUND

       On October 19, 2012, 170 Broadway NYC LP ("170 Broadway") entered into a

construction management agreement ("the CMA") with McGowan Builders Inc. ("McGowan"),

pursuant to which McGowan agreed to serve as the construction manager for a hotel being built at 170 Broadway in Manhattan, New York.  (Decl. Supp. Mot. Summ. J. (Docket No. 44) ("Abraham Decl."), Ex. 1 ("CMA")).  The CMA required McGowan to obtain a general liability insurance policy listing 170 Broadway and its affiliates as "additional insureds." (CMA at 35). McGowan apparently satisfied that requirement through a one-year general liability policy that it had already obtained in August 2012, with an effective date of August 12, 2012, from Defendant Old Republic.  (Decl. Supp. Mot. Summ. J. (Docket No. 46) ("Potashner Decl."), Ex. 15 ("Old Republic Policy")).  Separately, 170 Broadway maintained its own general liability protection in the form of a policy it obtained from Plaintiff Wausau.  (Decl. Supp. Mot. Summ. J. (Docket No. 48) ("George Decl."), Ex. 7).

In its capacity as construction manager, McGowan was responsible for overseeing several aspects of the project, including, most relevant here, hiring subcontractors and creating and maintaining a "site-specific safety plan."  (Def.'s Resp. Pl.'s Statement Undisputed Facts (Docket No. 55) ("Def.'s 56.1 Statement") ¶¶ 34, 36).  In connection with that role, on October 23, 2012, Adam Burawski, an employee of Tyco Integrated Security LLC ("Tyco"), came to the 170 Broadway site to meet with representatives of McGowan about providing security services for the project.  (Def.'s 56.1 Statement ¶¶ 20-21).  Before the meeting began, however, Burawski allegedly tripped and fell entering a bathroom, and sustained a serious injury.  (*Id.* ¶ 19; George Decl., Ex. 4 ¶ 25).

In May 2013, Burawski filed suit in New York State Supreme Court against 170 Broadway and two of its affiliates, Carlyle Development Group LLC and Carlyle Partners II, LP, (collectively the "Broadway Defendants").  (George Decl., Ex. 3).  Although it is unclear from the record exactly when the Broadway Defendants learned about the possibility of a lawsuit, it

appears Burawski's attorney provided notice of a possible claim as early as February 2013. (McCune Aff. (Docket No. 51), Ex. 4 at 2).  In any case, on June 26, 2013, the Broadway Defendants sent McGowan a letter tendering their defenses to the *Burawski* action and demanding indemnification under the Old Republic policy.  (Def.'s 56.1 Statement ¶ 6).  Old Republic was notified of the suit, in turn, between July 1, 2013 and August 2, 2013, when Wausau sent McGowan a letter formally requesting that it notify its insurer of the claim against the Broadway Defendants and indicating a belief that the claim fell within the additional insured coverage required by the CMA.  (*Id.* ¶ 9; Potashner Decl., Ex. 17 at 22, 43, 45; *see id.*, Ex. 8).

On August 29, 2013, Old Republic notified Wausau that the claim did not fall within the additional insured coverage in the Old Republic Policy and, therefore, that it would not defend or indemnify the Broadway Defendants pursuant to the policy covering McGowan.  (George Decl., Ex. 9).  In the letter, Old Republic expressly reserved the right to interpose additional reasons for denying coverage in the future.  (*Id.*; *see* Def.'s 56.1 Statement ¶¶ 14-15).  Shortly thereafter, on September 4, 2013, Burawski filed an amended complaint also naming McGowan as a defendant.  (George Decl., Ex. 4).  In April 2014, Wausau commenced this lawsuit, seeking a declaration that Old Republic is obligated to provide the Broadway Defendants with a defense and with indemnification.  (Docket No. 2).  It now moves for summary judgment.

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam).  An issue of fact qualifies as genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of

material fact.  *See Celotex*, 477 U.S. at 325.  "In moving for summary judgment against a party

who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can

point to an absence of evidence to support an essential element of the nonmoving party's claim."

*Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*,

477 U.S. at 322-23).

   In ruling on a motion for summary judgment, all evidence must be viewed "in the light

most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affs.*,

373 F.3d 83, 89 (2d Cir. 2004), and the Court must "resolve all ambiguities and draw all

permissible factual inferences in favor of the party against whom summary judgment is sought,"

*Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).  To

defeat a motion for summary judgment, the non-moving party must advance more than a

"scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some

metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party "cannot defeat the motion by relying on

the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits

supporting the motion are not credible."  *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir.

1996) (internal citation omitted).

## DISCUSSION

   As noted, Wausau claims that Old Republic has a duty to defend and indemnify the

Broadway Defendants in the *Burawski* action.  Old Republic denies that it owes either duty.  In

addition, Old Republic contends that, even if it otherwise would owe these duties, it is excused

from performance because the Broadway Defendants failed to provide timely notice of the potential lawsuit.  The Court will considers these arguments in turn.

## A.      Old Republic's Duty To Defend

The Court begins with Wausau's argument that Old Republic is obligated to defend the Broadway Defendants in the *Burawski* action.  (Mem. Law Supp. Pl. Wausau Underwriters Ins. Co.'s Mot. Summ. J. (Docket No. 45) ("Pl.'s Mem.") 4-11).  "[A]n insurer's duty to defend presents a question of law appropriate for resolution by summary judgment."  *Wausau Underwriters Ins. Co. v. QBE Ins. Corp.*, 496 F. Supp. 2d 357, 360 (S.D.N.Y. 2007) (citing *Avondale Indus., Inc. v. Travelers Indem. Co.*, 887 F.2d 1200, 1204 (2d Cir. 1989)).  Under New York Law — which the parties agree applies, *see Cargill, Inc. v. Charles Kowsky Res., Inc.*, 949 F.2d 51, 55 (2d Cir. 1991) — an "insurer's duty to defend its insured is exceedingly broad." *Regal Const. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 15 N.Y.3d 34, 37 (2010) (internal quotation marks omitted).  An insurer must defend its insured whenever "the allegations of the complaint suggest a reasonable possibility of coverage."  *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 141 (2d Cir. 2014) (internal quotation marks omitted); *see also Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 65 (1991) ("[A]n insurer may be contractually bound to defend even though it may not ultimately be bound to pay, either because its insured is not factually or legally liable or because the occurrence is later proven to be outside the policy's coverage.").  And even where a complaint itself does not suggest the possibility of coverage, the insurer nevertheless has a duty to defend if facts outside the complaint suggest that the claim is within the scope of the relevant insurance policy.  *See Fitzpatrick*, 78 N.Y.2d at 66. In both cases, "[a]ny doubt as to whether the allegations state a claim within the coverage of the policy must be resolved in favor of the insured and against the carrier."  *Euchner-USA*, 754 F.3d

at 141 (internal quotation marks omitted).  Moreover, an insurer's duty to defend is the same regardless of whether the defendant is a named insured in the policy or is instead an additional insured.  That is because "additional insured" is "'a recognized term in insurance contracts, and the well-understood meaning of the term is an entity enjoying the *same* protection as the named insured.'"  *Kassis v. Ohio Cas. Ins. Co.*, 12 N.Y.3d 595, 599-600 (2009) (quoting *Pecker Iron Works of N.Y., Inc. v. Traveler's Ins. Co.*, 99 N.Y.2d 391, 393 (2003)).

In this case, the parties appear to agree that whether Old Republic is obligated to defend the Broadway Defendants turns on whether the allegations in Burawski's complaint implicate the "additional insured" endorsements in the Old Republic policy.  (Pl.'s Mem. 4-7; Def.'s Mem. Law Opp'n Pl.'s Mot. Summ. J. (Docket No. 53) ("Def.'s Mem.") 4-6; Reply Mem. Law Further Supp. Pl. Wausau Underwriters Ins. Co.'s Mot. Summ. J. (Docket No. 56) ("Pl.'s Reply Mem.") 2-5).  In arguing that Old Republic is obligated to defend, Wausau relies on two such endorsements.  (Pl.'s Mem. 4-6).  The first provides, in relevant part, that the policy includes "as an additional insured the person(s) or organization(s) shown" in an attached schedule, "but only with respect to liability for 'bodily injury,' 'property damage' or 'personal and advertising injury' caused, in whole or in part, by" either McGowan's "acts or omissions" or "[t]he acts or omissions of those acting on [McGowan's] behalf . . . in the performance of [McGowan's] ongoing operations for the additional insured(s) . . . ."  (Old Republic Policy 74).  The attached schedule states, in turn, that additional insured coverage extends to other parties "WHERE REQUIRED BY WRITTEN CONTRACT."  (*Id.*).  The second endorsement upon which Wausau relies amends the Old Republic policy "to include as an insured the person or organization shown" in another schedule, "but only with respect to liability arising out of [McGowan's] ongoing operations."  (*Id.* at 88).  The relevant schedule for that endorsement

states that additional insured coverage extends "WHERE WRITTEN CONTRACT REQUIRES INDEMNIFICATION FOR LIABILITY ARISING OUT OF [McGOWAN'S] ONGOING OPERATIONS." (*Id.*).

Thus, both endorsements provide additional insured coverage where (1) such coverage is required by written contract and (2) the liability at issue arose from an act or omission that was part of McGowan's "ongoing operations." Here, there is no dispute that the CMA satisfies the first prong as it is a written agreement that required McGowan to obtain general liability insurance naming the Broadway Defendants as additional insureds. (Abraham Decl., Ex. 1, at 31-37). Wausau contends that the second condition — that the liability arise out of McGowan's ongoing operations — is also satisfied because Burawski's complaint alleges that McGowan was hired to perform work at 170 Broadway; that it was performing the work on October 23, 2012, when Burawski was injured; and that his injury was caused by McGowan's failure to adequately maintain the site. (George Decl., Ex. 4 ¶¶ 20, 22, 25-26). It argues that those allegations necessarily "suggest a reasonable possibility of coverage." *Euchner-USA*, 754 F.3d at 141.

The Court agrees. In fact, the allegations in the *Burawski* action are materially identical to allegations that the New York Court of Appeals has held are, as a matter of law, sufficient to raise a reasonable possibility of coverage. *See, e.g.*, *BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 8 N.Y.3d 708, 715 (2007). As with this case, *BP Air Conditioning* involved a slip-and-fall accident that, in turn, gave rise to a claim by a subcontractor that, as an additional insured, it was entitled to a defense from the insurance provider of the primary insured, whose work allegedly precipitated the accident. *Id.* at 712-13. The Court of Appeals concluded that the reasonable possibility test was satisfied where the underlying complaint alleged that the primary insured "was engaged in construction work at the work site where [the plaintiff] was injured, that

[the primary insured] breached its duty to keep the work site safe and that [this] breach caused [the plaintiff's injuries]." *Id.* at 715; *see also Wausau Underwriters*, 496 F. Supp. 2d at 360-61 (applying *BP Air Conditioning* and holding, under circumstances similar to this case, that the duty to defend an additional insured was triggered where the plaintiff in the underlying action allegedly sustained an injury on the construction site and due to the negligence of the named insured). That description applies equally to this case and the allegations in the *Burawski* action. (*See* George Decl., Ex. 4). Thus, applying *BP Air Conditioning*, the Court concludes that Burawski's alleged injury "arose out of" McGowan's ongoing operations and the Broadway Defendants were thus entitled to a defense from Old Republic.

Old Republic's principal response is that Burawski's injury could not have stemmed from McGowan's "acts or omissions" because McGowan had not yet begun the "Work" — a term it argues is defined in the CMA to, in essence, encompass the actual construction of the hotel. (Def.'s Mem. 4-6; *see also* CMA 9). That argument is unpersuasive. As an initial matter, whether the "Work" as defined by the contract had begun is irrelevant because, as discussed above, the injury "arose out of" McGowan's ongoing operations, which is all that is necessary to trigger the additional insured provisions. In any case, though, "Work" is defined in the CMA to "include[] all labor, materials, equipment and services to be provided by [McGowan]" and, as noted, one of the services to be provided by McGowan was the hiring of subcontractors. (Def.'s 56.1 Statement ¶¶ 33-35; CMA at 9). Thus, as McGowan was in the process of hiring of subcontractors when Burawski was injured, the "Work," as defined in the CMA, had in fact begun.

*Worth Construction Company v. Admiral Insurance Company*, 10 N.Y.3d 411, 416 (2008), upon which Old Republic relies (Def.'s Mem. 4), does not require a contrary conclusion.

*Worth* involved a construction-site injury in which a worker slipped and fell on a set of stairs installed by Pacific Steel, Inc., a sub-contractor on the project.  10 N.Y.3d at 414.  The fall, however, was caused by fireproofing material applied to the stairs by a different sub-contractor after Pacific had completed its work on the project.  *Id.*  The injured worker sued Worth, the general contractor, and Worth then sought a declaratory judgment that it was entitled to coverage as an additional insured under Pacific Steel's general liability policy.  *Id.*  The New York Court of Appeals held that Pacific Steel was not obligated to defend, reasoning that the injury could not be traced to any acts or omissions on the part of Pacific Steel because "an entirely separate company" had applied the fireproofing and Pacific Steel had had no role in selecting that other company.  *Id.* at 415-416.  Therefore, the Court held, "it could no[t] . . . be argued that there was any connection between [the] accident and the risk for which [Pacific Steel's insurance] coverage was intended."  *Id.* at 416.

That is not the case here.  Burawski alleges that his accident was caused by the negligence of McGowan, among other parties.  (George Decl., Ex. 4 ¶ 26).  Additionally, McGowan was the project's construction manager, and, therefore, in charge of the entire project, not just a discrete component of the project, as Pacific Steel was in *Worth*.  (Def.'s 56.1 Statement ¶¶ 32-33).  Accordingly, unlike *Worth*, where the staircase at issue was "'merely the situs of the accident,' . . . [and] there was no connection between the accident and Pacific's work," *Regal Const. Corp.*, 15 N.Y.3d at 39 (quoting *Worth*, 10 N.Y.3d at 416), Burawski's complaint alleges a clear connection between his injury and the risk for which the additional insured endorsements in the Old Republic policy were intended, *cf. Worth*, 10 N.Y.3d at 416 (concluding that a sub-contractor was not an additional insured only where "it could no[t] . . . be argued that there was *any connection* between [the] accident and the risk for which coverage was

9

intended (emphasis added)).  Further, and in any event, facts outside Burawski's complaint also suggest the reasonable possibility that Old Republic would be required to defend the Broadway Defendants.  As noted, McGowan was responsible for hiring subcontractors for the 170 Broadway project.  (Def.'s 56.1 Statement ¶ 33-35).  Burawski was on the premises as a representative of Tyco, a potential subcontractor, in connection with Tyco's bid to work on the project.  (*Id.* ¶¶ 20-21).  It is plainly a reasonable possibility that, under those circumstances, Burawski's injury could be said to "aris[e] out of" McGowan's "acts or omissions" in connection with its "ongoing operations," namely its responsibility under the CMA to hire subcontractors. (Old Republic Policy 74, 88).

Accordingly, the Court holds that, under the terms of the relevant endorsements, Old Republic is indeed obligated to defend the Broadway Defendants in the *Burawski* action.

**B.   Old Republic's Duty To Indemnify**

As noted, Wausau also seeks a declaration that Old Republic is required to indemnify the Broadway Defendants for any liability incurred in the *Burawski* action.  The duty to indemnify is "distinctly different" from the duty to defend, *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (1985), because it is measured by the "actual basis for the insured's liability" rather than "the allegations of [the] pleadings," *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 627-28 (2d Cir. 2001) (internal quotation marks omitted).  Thus, the question is whether Burawski's claims actually fall within the additional insured provisions in the Old Republic policy.  Relying principally on the New York Court of Appeals's decision in *Regal Construction*, Wausau argues that Burawski's claims necessarily "ar[ose] out of" McGowan's "ongoing operations" and, thus, are covered by the endorsements in the Old Republic policy.  (Pl.'s Mem. 10-11; Pl.'s Reply Mem. 4-6).

The Court agrees.  In *Regal Construction*, a subcontractor's employee was injured at a construction site, allegedly due to the general contractor's negligence.  15 N.Y.3d at 36-38.  The injured employee sued the general contractor, who then sought indemnification from one of its subcontractors, which had been required to maintain an insurance contract listing the general contractor as an additional insured.  *See id.* at 38.  The subcontractor and its insurer sought a declaratory judgment, arguing that they were not obligated to defend or indemnify the general contractor because the injury was the result of the general contractor's negligence and thus could not have arisen out of the subcontractor's operations.  *See id.* at 37-38.  The Court of Appeals rejected their argument, holding that the insurer was obligated to indemnify the general contractor.  The Court began by observing that it had construed "arising out of" to mean "originating from, incident to, or having connection with," terms which require an "inquiry . . . 'not [into] the precise cause of the accident but the general nature of the operation in the course of which the injury was sustained.'"  *Id.* at 38 (quoting *Maroney v N.Y. Cent. Mut. Fire Ins. Co.*, 5 N.Y.3d 467, 472 (2005) and *Worth*, 10 N.Y.3d at 416).  Applying that standard, the Court held that the fact that the employee was on the site and working for the subcontractor when he was injured constituted a sufficient "connection between the accident and [the sub-contractor's] work" to establish that the injury "arose out of" the subcontractor's acts or omissions.  *Id.* at 38-39.  A policy covering liability "arising out of" the policyholder's operations, the Court explained, requires "only that there be some causal relationship between the injury and the risk for which coverage is provided."  *Id.* at 38 (internal quotation marks omitted).

Applying *Regal Construction*, lower courts in New York have held that, where a person is acting on behalf of the named insured, "it is not necessary to try the issue of causation" prior to concluding that the relevant injury arose out of the named insured's ongoing operations.  *See,*

11

*e.g.*, *Nat'l Union Fire Ins.*, 103 A.D.3d at 474; *Admiral Ins. Co. v. Am. Empire Surplus Lines Ins. Co.*, 96 A.D.3d 585, 588-589 & n. 5 (App. Div. 1st Dep't 2012); *Hunter Roberts Constr. Grp., LLC v. Arch Ins. Co.*, 75 A.D.3d 404, 408 (App. Div. 1st Dep't 2010); *see also Liberty Mut. Ins. Co. v. Zurich Am. Ins. Co.*, No. 11-CV-9357 (ALC) (KNF), 2014 WL 1303595, at *5 (S.D.N.Y. Mar. 28, 2014) (holding that an injury incurred by an individual acting on behalf of the named insured necessarily arose out of the named insured's ongoing operations, and therefore summary judgment could be granted without a determination regarding the negligence of the additional insured). That is because, as these cases make clear, whether an injury was legally caused by a party's actions is a much more demanding question than whether the injury arose out of those actions. *See, e.g.*, *Admiral Ins. Co.*, 96 A.D.3d at 588. In other words, it is possible to determine whether an injury arose out of an insured's operations without reaching a determination on liability, so a final determination on causation is not necessary. As the Court has already concluded that Burawski's injuries arose out of McGowan's ongoing operations, it follows that the Broadway Defendants are entitled to indemnification from Old Republic even without a determination regarding legal causation.

To be sure, at the time of the incident giving rise to this case, Tyco — Burawski's employer — was not a subcontractor of McGowan, but only a *potential* subcontractor. In the Court's view, however, that fact would not affect the New York Court of Appeals's conclusion if confronted with the facts of this case — given that McGowan was responsible for keeping the site safe and for selecting subcontractors, and Burawski's injury occurred while he was on site in connection with Tyco's bid to become a subcontractor. *See, e.g.*, *Runner v. N.Y. Stock Exch., Inc.*, 568 F.3d 383, 386 (2d Cir. 2009) (noting that when sitting in diversity jurisdiction, it is the responsibility of the Court to "carefully predict how the state's highest court would resolve the

uncertainties . . . identified" by the Court (quoting *The Travelers Ins. Co. v. Carpenter*, 411 F.3d 323, 329 (2d Cir. 2005)).  That is, Burawski's alleged injury plainly had "some causal relationship" to — it originated from, was incident to, and had a connection with — the "risk for which coverage is provided," namely McGowan's operations.  *Regal Constr.*, 15 N.Y.3d at 38 (internal quotation marks omitted).  In other words, the fact that the injured party was an employee of a *potential* subcontractor rather than an actual subcontractor is immaterial, at least where, as here, the injury occurred in connection with the potential subcontractor's bid to work on the project *and* the insured had some role in evaluating the potential subcontractor's bid.

Old Republic's arguments to the contrary are unpersuasive.  Old Republic relies again on *Worth* (Def.'s Mem. 4-5), but — as discussed above and in *Regal Construction* itself, *see* 15 N.Y.3d at 38-39 — *Worth* is easily distinguished from this case.  Next, Old Republic contends that summary judgment on indemnification cannot precede a determination of liability in the *Burawski* action.  (Def.'s Mem. 6-8).  But, as noted, New York courts have held that the question of indemnification can be resolved first where, as here, the contract at issue provided for indemnification for liability related to injuries "arising out of" the named insured's ongoing operations.  *See, e.g.*, *Regal*, 15 N.Y.3d at 38; *Nat'l Union Fire Ins.*, 103 A.D.3d at 474; *Admiral Ins.*, 96 A.D.3d at 589.  Moreover, the cases cited by Old Republic to the contrary are inapt as they involved policies that contained liability exclusions (such as for negligence of the additional insured), and thus the insurer's obligation to indemnify the insured could not be resolved on the basis of the "arising out of language" alone.  *See, e.g.*, *Stout v. 1 E. 66th St. Corp.*, 90 A.D.3d 898, 903 (App. Div. 2d Dep't 2011) (denying summary judgment for essentially the same reasons that the Court of Appeals did in *Worth*, namely that the named insured's work was merely the *situs* of the accident and that there was no connection between its work and the

injury); *Pavarini Constr. Co. v. Liberty Mut. Ins. Co.*, 270 A.D.2d 98, 99 (App. Div. 1st Dep't 2000) (holding that summary judgment as to the duty to indemnify was premature where the policy contained an exception for injuries caused by the negligent acts of the additional insured and there had not yet been a negligence determination in the underlying action); *Evans v. Royal Ins. Co.*, 192 A.D.2d 1105, 1105 (App. Div. 4th Dep't 1993) (declining to grant summary judgment where a question of fact remained about whether the injury arose from activity covered by the policy's liability exclusions); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. XL Ins. Am., Inc.*, No. 12-CV-5007 (JSR), 2013 WL 1944468, at *6-7 (S.D.N.Y. May 7, 2013) (denying summary judgment, under California law, in favor of the plaintiff after concluding that the policy required a showing that the injury at issue was "caused by" the named insured's actions).[1]

Finally, Old Republic claims that indemnification is appropriate only in cases of vicarious liability. (Def.'s Mem. 8-9.) In making that argument, however, Old Republic relies exclusively on cases interpreting insurance agreements that were *expressly* limited to vicarious liability. For example, Old Republic relies primarily on *Wilson Central School District v. Utica Mutual Insurance Co.*, 123 A.D.3d 920 (App. Div. 2d Dep't 2014). (Def.'s Mem. 8-9.) In that case, the Court held that an endorsement providing additional insured coverage, "but *only* to the extent that such additional insured is held liable for [the primary insured's] acts or omissions arising out of and in the course of ongoing operations performed by [the primary insured] or [its]

---

[1]      Although the Appellate Division's decision in *Pistolesi v. N. Country Ins. Co.*, 210 A.D.2d 961 (App. Div. 4th Dep't 1994), is less clear, in denying summary judgment the Court cited only cases in which there was a substantial question regarding whether the underlying acts fell into a coverage exclusion. *See id.* at 962. Accordingly, the Court does not read that case to hold that there is a blanket prohibition against granting a declaratory judgment prior to determination of liability in the underlying action. Moreover, reading the case to hold otherwise would conflict with the New York Court of Appeals's decision in *Regal Construction*.

14

subcontractors," provided coverage to the additional insured only where it was held vicariously liable for the primary insured's actions. *Id.* at 921 (emphasis added) (internal quotation marks omitted). That holding, however, was rooted in the contractual language quoted above, which is plainly limited by its terms to covering vicarious liability. As there is no similar limitation in the additional insured provisions of the Old Republic Policy — indeed, as noted, those provisions extend coverage to any liability arising out of McGowan's ongoing operations (Potashner Decl., Ex. 15, at 89) — *Wilson* is inapt.

Additionally, Old Republic's reading of *Wilson* is foreclosed by the Court of Appeals's decision in *Regal Construction*. If it were the case that, as Old Republic contends, a determination as to vicarious liability were a prerequisite to resolving every additional insured claim for indemnification, then it would be impossible to determine the duty to indemnify prior to determining legal causation. But, as discussed, *Regal Construction* states that a duty to indemnify exists under an additional insured provision that provides coverage for liability "arising out of" an insured operations where "there [is] some causal relationship between the injury and the risk for which coverage is provided." *Regal*, 15 N.Y.3d at 38. That standard plainly does not require a determination regarding vicarious liability.

In short, on their face, the plain terms of the contracts at issue require Old Republic to not only defend the Broadway Defendants in the *Burawski* action, but also to indemnify the Broadway Defendants in the event they are found liable in that action. Further, the Court finds that the Old Republic policy is "primary" rather than "excess" to any coverage provided by Wausau's policy (*see* Pl.'s Mem. 11-14), as Old Republic's memorandum does not respond to Wausau's argument on that score. *See Cowan v. City of Mount Vernon*, — F. Supp. 3d —, No. 12-CV-6881 (KMK), 2015 WL 1400088, at *15 (S.D.N.Y. Mar. 27, 2015) ("Federal courts may

deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." (internal quotation marks omitted)).

**C.     The Defense of Untimely Notice**

That does not end the matter, however, as Old Republic contends that, even if it would otherwise be obligated to defend and indemnify the Broadway Defendants, it need not do so because it did not receive timely notice of Burawski's claim. (Def.'s Mem. 9-13). Wausau responds that Old Republic did receive timely notice; that, even if it did not receive timely notice, Old Republic waived any defense based on timeliness of the notice; and that Old Republic cannot assert a late-notice defense because it has not identified any evidence suggesting that it was prejudiced by the alleged delay in receiving notice. (Pl.'s Mem. 14-20). Wausau has the better argument. Even assuming *arguendo* that Old Republic did not receive timely notice and did not waive any defense based on the timeliness of notice, Old Republic's inability to show that it was prejudiced by the late notice precludes it from denying coverage solely on that basis.

New York law previously allowed insurers to deny coverage on the basis of late notice, without regard for whether the late notice caused any prejudice. In 2008, however, the law was amended and, for policies issued after January 17, 2009 — a universe that includes the Old Republic policy — insurers may not deny claims on the ground of late notice in the absence of prejudice. *See* N.Y. Insur. Law. § 3420(a)(5); *see* An Act to Amend the Civil Practice Law and Rules and the Insurance Law, in Relation to Liability Insurance Policies § 8, 2008 N.Y. Sess. Laws 388 (McKinney 2008). When notice is untimely, but nevertheless given within two years of the accident or occurrence — as the notice was here (*see* Def.'s 56.1 Statement ¶¶ 9, 19) —

16

the insurer has the burden of proving that it was prejudiced by the late notice.  N.Y. Insur. Law. § 3420(c)(2)(A).  To carry that burden, an insurer must show that the failure to provide timely notice "materially impair[ed] the ability of the insurer to investigate or defend the claim."  N.Y. Insur. Law § 3420(c)(2)(C); *see Atl. Cas. Ins. Co. v. Value Waterproofing, Inc.*, 918 F. Supp. 2d 243, 254 (S.D.N.Y. 2013).  Thus, in order to deny coverage, Old Republic must show that it was prejudiced by the late notice.  (*See* Pl.'s Reply Mem. 7-8).

Significantly, Old Republic must show that the delay in giving notice itself "materially impair[ed]" its ability "to investigate or defend the claim."  N.Y. Insur. Law § 3420(c)(2)(C).  Here, although Burawski was injured on October 23, 2012 (Def.'s 56.1 Statement ¶ 19), there is no evidence in the record that the Broadway Defendants received notice of the possibility of a claim by Burawski prior to February 2013.  (McCune Aff., Ex. 4).  Thus, February 1, 2013 is the earliest that the Broadway Defendants were required to notify Old Republic about Burawski's claim.  *See, e.g.*, *Sparacino*, 50 F.3d at 143 (explaining that an insured's obligation to provide notice is triggered when "circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim").  It follows that Old Republic has to show prejudice as a result of the delay between February 1, 2013, and July 2013, when it received notice.  It cannot rely on any prejudice that it may have suffered as a result of the four months between the accident and the date upon which the Broadway Defendants first learned of Burawski's potential claim.  Any such prejudice would not be the result of untimely notice.

Old Republic identifies three ways in which it was allegedly prejudiced by the late notice it received from the Broadway Defendants: first, by not being able to photograph the accident site; second, by not being able to conduct a timely investigation, including witness interviews, of the facts surrounding the claim; and, third, by not being able to engage in pre-suit negotiations

17

with Burawski.  (Def.'s Mem. 12-13; McCune Aff. ¶ 10).  With respect to the first two ways, however, Old Republic neither points to evidence suggesting that the accident site was substantially unchanged between October 2012 and February 2013 nor explains how the site changed between February and July 2013 such that it could no longer conduct an adequate investigation.  In the absence of such proof, Old Republic's conclusory assertions that it would have taken actions that, for unspecified reasons, it could not take after it received notice are insufficient to raise a triable issue of fact as to prejudice.  *See, e.g.*, *Plaza ex rel. Rodriguez v. N.Y. Health & Hosp. Corp. (Jacobi Med. Ctr.)*, 949 N.Y.S.2d 25, 31 (App. Div. 1st Dep't 2012) (finding a "general claim" of prejudice insufficient to show prejudice); *Anonymous v. N.Y. State Dep't of Health*, 927 N.Y.S.2d 1, 1 (App. Div. 1st Dep't 2011) ("Conclusory allegations that the passage of time has dulled witnesses' memories do not demonstrate actual prejudice").  In short, there is no support in the record for either the proposition that Old Republic could have conducted a meaningful site investigation in February 2013 or that the passage of time between February and June 2013 materially impaired its ability to conduct such an investigation.  Thus, it cannot show prejudice on either of these grounds.

Similarly, Old Republic's third basis for prejudice, the inability to engage in pre-suit negotiations, does not raise a triable dispute of fact.  (Def.'s Mem. 13).  As an initial matter, Old Republic does not provide any explanation of why pre-suit negotiations would have been more effective at resolving the dispute than the negotiations in which it could have engaged after July 2013.  Moreover, Old Republic does not assert that it has *ever* engaged in negotiations with Burawski.  Thus, there is no basis in the record to conclude that *pre*-suit negotiations would have been more effective than *post*-suit negotiations and, as such, no reasonable jury could conclude that Old Republic's inability to engage in pre-suit negotiations constituted material prejudice.

Old Republic's failure to identify any actual evidence of prejudice is in stark contrast to those cases in which Courts have found prejudice due to late notice.  For example, in *Atlantic Casualty*, the Court held that an insurer was prejudiced by the late notice it had received from its insured where the accident site had been destroyed between the date on which the insured learned of the possibility of a claim and the date on which it provided notice.  *See* 918 F. Supp. 2d at 255-56.  In reaching that conclusion, the Court also recited the various steps that the insurer had taken to mitigate this prejudice — including visiting the site, asking for photographs of the site, and interviewing employees of the insured — before ultimately determining that these steps were insufficient.  *Id.* at 256.  Here, by contrast, Old Republic neither identifies any evidence of prejudice nor explains how it has tried to remedy this prejudice to Old Republic.

Those failures are especially telling because Old Republic *is* providing a defense to McGowan, even though McGowan gave notice of the possibility of a law suit even later than the Broadway Defendants.  (Def.'s Mem. 15; Potashner Decl. ¶ 61).  That is, if the alleged delay in receiving notice from the Broadway Defendants had actually caused Old Republic prejudice, it would plainly be in a position to identify with specificity the ways in which it did.  As Old Republic fails to explain, let alone provide evidence of, how the Broadway Defendants' late notice "materially impair[ed] the ability of the insurer to investigate or defend the claim," N.Y. Insur. Law § 3420(c)(2)(C), the Court concludes, as a matter of law, that Old Republic was not entitled to deny coverage on the basis of late notice.  Accordingly, Old Republic is obligated to defend and indemnify the Broadway Defendants in the *Burawski* action.

**D.**     **Wausau's Entitlement to Costs and Interest**

Finally, Wausau contends that it is entitled to reimbursement for its costs of defending the Broadway Defendants, plus interest accruing from April 1, 2014.  *See Nat'l Union Fire Ins.*,

19

103 A.D.3d at 474 ("In the event of a breach of the insurer's duty to defend, the insured's damages are the expenses reasonably incurred by it in defending the action after the [insurer's] refusal to do so." (internal quotation marks omitted)).  (Pl.'s Mem. 20-21).  Old Republic does not dispute that, if it breached a duty to defend, it must reimburse Wausau for Wausau's reasonable costs plus interest.  As the Court has concluded that Old Republic had a duty defend, and there is no question that Old Republic has not provided the required defense, it follows that Old Republic has breached its duty to defend the Broadway Defendants.  Accordingly, Wausau's request for reasonable costs plus interest is GRANTED.

## CONCLUSION

For the reasons stated above, Wausau's motion for summary judgment is granted.  The Court concludes that, under the plain terms of the relevant contracts, Old Republic is required to defend and indemnify the Broadway Defendants in the *Burawski* action.

Wausau shall submit a proposed judgment consistent with the foregoing within **one week** of this Opinion and Order.  The Clerk of Court is directed to terminate Docket No. 43 and to close the case.

SO ORDERED.

Date:   August 7, 2015
        New York, New York

_____
JESSE M. FURMAN
United States District Judge